DAVID MITCHELL v. THE STATE.

No. 11739.   Delivered May 23, 1928.
Rehearing denied November 7, 1928.

The opinion states the case.

*R. D. Blades* of Fort Stockton, and *J. F. Cunningham* of Abilene, for appellant.

*W. C. Jackson,* County Attorney, of Fort Stockton, *Joe G. Montague* of Fort Stockton and *A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Offense, murder; penalty, thirty-five years in the penitentiary.

Appellant was charged with the murder of Pat Murphy. About two days after the disappearance of deceased his body was found in the water of the Pecos River by a searching party and at the time it was weighted down with two rocks and was lying at the bottom of a hole of water described as about waist deep. His head showed to have been hit by some blunt instrument. Without giving in detail the evidence, suffice it to say that cogent circumstances were introduced showing that deceased came to his death at the hands of appellant and his brother. The body of Murphy was bare of clothes when found and some of the State's witnesses testified to finding his clothes under a bush between the river and appellant's place of business, also to finding deceased's belt at a mud hole where the car of appellant was stuck the next morning after it is claimed deceased was murdered. The State's witnesses also testified to finding a sap or piece of loaded hose in the gutter at the back of appellant's place of business with which it was claimed deceased was struck.

The contention is presented in a motion for new trial that appellant since the trial has discovered evidence disproving the State's theory that appellant was in any way connected with the last above mentioned articles. It is shown in affidavits attached to such motion that certain witnesses made oath that they were over the ground where these various articles were found almost immediately after the discovery of deceased's body and saw no such at that time. It is claimed this testimony was very material to show that such articles had been "planted" by someone who was interested in seeing appellant convicted. There is lacking in appellant's motion for new trial any averments which show that failure to procure this testimony on the trial was not due to a lack of reasonable diligence on his part. The names of some of the affiants appear to be the same as those of witnesses who testified in the trial and the record suggests very strongly that they are one and the same persons. These witnesses were shown to have been in such juxtaposition to the transaction as to make it apparent that they might have knowledge of material facts and just why appellant's counsel failed to talk to these witnesses before the trial or during the trial is not shown. It must always be shown in an issue of this kind that the newly discovered evidence was such as reasonable diligence could not have secured at the former trial. West v. State, 2 Tex. Crim. App. 209; Terry v. State, 3 Tex. Crim. App. 236; Fowler v. State, 148 S. W. 576; Branch's P. C., Secs. 192, 198, where the authorities are collated upon this subject.

Appellant made application to continue this cause for the alleged absence of several witnesses. No useful purpose can be served by discussing each witness and a discussion of two of these will suffice to illustrate the point involved. Among the absent witnesses was "a woman called 'Blanche' and a man called 'Happy.'" The facts which they expected to prove by these two witnesses are set out as follows:

" 'Blanche' struck Murphy, whose body is alleged to have been found in the river, on the night of said alleged murder when the said Murphy accused 'Blanche' of having stolen money from this defendant and his brothers; that Murphy and 'Blanche' at that time had a quarrel; that the lick which 'Blanche' struck Murphy was in the face and made Murphy's nose bleed and caused his upper lip to swell; defendant expects to prove by 'Blanche' and 'Happy' the make of car that Paul and Dave Mitchell and Pat Murphy came to their tent in the night of the alleged murder; defendant expects

to prove further by 'Blanche' and 'Happy' that on said night after Dave and Paul Mitchell and Pat Murphy left the tent in the car together, that Murphy later returned to the tent alone; defendant expects to prove by these two witnesses the time of such visit."

The materiality of this testimony or its bearing upon the issues is not shown further than what appears in the above quotation. The accused seeking a continuance should show himself entitled thereto by definite and certain averments. Lowe v. State, 11 Tex. Crim. App. 259; Walker v. State, 13 Tex. Crim. App. 648; Branch's P. C., Sec. 320. The burden is upon him to show definitely that he is entitled to a continuance and the Court will not look beyond the bill of exception presenting the matter to find facts which should have been set out in such bill. Substantially the same facts were testified to by witnesses during the trial, and the State did not appear to have seriously contested their truth. Under these circumstances, the Court did not abuse the discretion given it by law in a matter of this kind. Fisher v. State, 4 Tex. Crim. App. 181; Branch's P. C., Sec. 322. From the averments of the motion for a continuance, we regard these two as the most important of the number named and the others will therefore not be discussed.

No brief has been filed and these appear to be the only errors alleged which could be considered worthy of discussion.

Believing the evidence sufficient, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the indictment it is averred that the appellant killed Pat Murphy "by then and there striking the said Pat Murphy in some way and manner to the grand jury unknown and with some substance to the grand jury unknown."

On appeal for the first time the point is made that the record is void of proof of the truth of the averment quoted, and upon that ground a reversal is sought. If, in fact, the means of death are unknown to the grand jurors, an indictment drawn in the form stated is sufficient. Sanchez v. State, 46 Tex. Crim. Rep. 179; Hughes v. State, 60 S. W. Rep. 562; Walker v. State, 14 Tex. Crim. App. 609. A careful examination has been made of the

various precedents relied upon by the appellant, as well as a number of others. Among them are the following: Monk v. State, 11 S. W. Rep. 460; Mason v. State, 168 S. W. Rep. 115; Middleton v. State, 217 S. W. Rep. 1046; Jorasco v. State, 6 Tex. Crim. App. 241; Williams v. State, 13 Tex. Crim. App. 518; Brewer v. State, 18 Tex. Crim. App. 456; also Walker v. State, 94 Tex. Crim. Rep. 418; Carr v. State, 80 Tex. Crim. Rep. 465; Forest v. State, 300 S. W. 51; Wharton on Homicide, 3rd Ed. Sec. 563; Wharton's Crim. Law, Sec. 658; Bishop's New Crim. Proc., 2nd Ed., Vol. 2, Sec. 552.

The averment of an indictment that the means causing death was unknown to the grand jury is a material allegation, the substance of which must be proven as pleaded. This requirement, however, is deemed sufficiently met if the development of the facts on the trial shows the means of death to be uncertain. It is otherwise, however, if such facts raise an issue as to whether the means of death were known or could have been known to the grand jurors by the exercise of reasonable diligence. In such case proof must be made of the lack of knowledge of such fact by the grand jurors, and that reasonable diligence was used to ascertain same.

Some days after the death of the deceased there was found about the premises of the appellant an instrument called a "black-jack," which was made out of a common garden hose. Near the place where the body was found there was a piece of iron pipe about one inch thick and about five feet long. The deceased was missed on the 27th of September. About the 30th of that month his naked body was found in the Pecos River weighted down by two large rocks. The body was in a bad state of decomposition and was very offensive. It was examined by a physician who testified that there was a depression in the cranium, and on the inside there was a blood-shot area. The scalp was not broken but badly swollen. An external examination did not reveal any evidence of violence, but in cutting into it, it showed a bruising of the vessels. There was enough depression to produce death and it would produce absolute unconsciousness. Without going into the cranial vault (which was not done) it could not be declared with certainty that death resulted from the injury mentioned. Ordinarily it would do so. The doctor expressed the opinion that the instrument with which the injury mentioned was inflicted was soft and heavy. There was handed him an instrument called a "black-jack" or "sap." He said that the injury was such as might have been inflicted with the

instrument mentioned; that any soft-loaded instrument with shot or lead or anything in it—an old sock or anything—with enough weight or enough cushion not to have a cutting contact, might break the skull without breaking the tissue. The doctor had had no previous experience with a body in the same condition, nor with an instrument of the nature mentioned. He had seen wounds inflicted with similar instruments but none in his local practice. He would not say that the instrument caused the wound. He did not make a post-mortem examination to ascertain whether death resulted from drowning, but expressed the view that death took place before the body was placed in the water.

The prosecution was upon circumstantial evidence, and the testimony is such as justified the verdict implying that the deceased was killed by the appellant and that by some means the condition described by the physician was caused by the appellant. The evidence adduced upon the trial fails to disclose with certainty the kind of instrument used in killing the deceased, and does not indicate that the grand jury was aware of the exact means of causing the death, nor that in failing to ascertain it the grand jurors were wanting in diligence.

The other questions arising from the record were sufficiently discussed and properly decided on the original hearing.

The motion is overruled.

*Overruled.*