PAUL MITCHELL v. THE STATE.

No. 12704.   Delivered March 12, 1930.

Reported in 26 S. W. (2d) 204.

The opinion states the case.

*Oliver Cunningham, W. E. Martin,* and *J. F. Cunningham,* all of Abilene, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, twenty-five years in the penitentiary.

This is a companion case to that of David Mitchell, reported in 10 S. W. (2nd) 87.

David and Paul Mitchell were brothers and the incriminating facts set out in the opinion above mentioned are practically identical with the facts of the instant case and the statement therein is deemed sufficient to illustrate the law point discussed herein with this addition:

It was apparently the State's theory that the deceased had stolen some money from Paul and David Mitchell, which furnished the motive for the murder.   Some of the State's witnesses placed deceased with the two Mitchell boys around twelve o'clock on the night deceased was killed.   They were at that time quarrelling and ill-feeling is shown to have existed between them as a result of the alleged robbery, above mentioned.   It seems to have been the State's theory that a short time after this hour deceased was struck in the head with a blunt instrument and his body thrown in the river, as set out in the Mitchell case, supra.   To meet this theory appellant placed witness Bill Galloway on the witness stand who testified in substance that he had occasion to go to the Mitchell place of business near one o'clock on the night in question and at that time found the

Mitchell boys in bed and on his way home saw the deceased; that deceased on that night had some money, flashing it about; and that the last witness saw of him about one thirty that night he was going in a direction away from the Mitchell place of business. This was material testimony in that it tended to show that the quarrel between the parties was over and that deceased may have been slain by another and robbed of his money.

·On cross-examination private prosecutor asked this witness if it was not a fact that he was then charged with felony theft and that the Sheriff of Jeff Davis County had a warrant for his arrest for said offense, to which witness replied that he did not know anything about being so charged; that the district attorney then asked said witness if he had ever been arrested, to which the witness replied in the negative and the private prosecutor then stated to the witness: "Well, you are just before being arrested. The Sheriff has a warrant for your arrest in his pocket." Whereupon the witness being excused, the Sheriff of Jeff Davis County, who was a brother of one of the jurors who tried the case, arrested said witness in the court room and took him from the court room. It further appears from the bill that the said Sheriff did not have any warrant for the arrest of said witness and that no charge had been filed against the witness in any county and that the sheriff had only received a telephone message from a constable of an adjoining town requesting him to recover from said witness a pistol and some underwear and to hold said witness in event he refused to deliver said articles. The witness having explained this to the jury, private prosecutor then asked him and compelled him to testify that the underwear mentioned in said telephone message was underwear that had been worn by a woman but that it was identically like the underwear that he had on at the time he was speaking. The Court upon request instructed the jury not to consider any of these matters. The appellant, we think, correctly contends before this Court that this entire proceeding was of such a prejudicial character that it could not be cured by an instruction. It conveyed to the jury information that witness was charged with a felony which was entirely without foundation. He was arrested and taken from the court room apparently without legal authority and under such circumstances as must have in some degree at least discredited him before the jury. Having sought to discredit the witness upon an alleged state of facts, which had no basis whatever, the error might have been cured if those making this charge had themselves voluntarily taken such action as would

have as much as possible removed the false imputation against the witness. So far as this record shows nothing was done in this regard and the matter rested before the jury with the damaging allegations above mentioned denied only by the witness. Not only so, but after being apprised of what appears by the bill to be the truth of the matter, the attorneys instead of correcting it, attempted to inject further prejudicial and inadmissible testimony into the case which tended to reflect upon the witness. The materiality of his testimony in behalf of appellant is apparent. The highly prejudicial nature of the proceedings recited above is likewise so. The verdict was for twenty-five years. We cannot say this proceeding was without probable effect on the jury. Precedents are not so important on this question since its effect must be measured by the particular facts of the case in which it occurs. Some of them are collated in Branch's Criminal Law, Sec. 868. See also Vernon's C. C. P., Art. 648, Note 11.

The sufficiency of the indictment and of the evidence to sustain its averments was discussed on motion for rehearing in the case of Mitchell v. State, supra, and what is said there sufficiently disposes of appellant's contention with respect to these matters.

For the error above discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.